JOHN ALFRED BLACKWELDER v. CITY OF WINSTON-SALEM AND MICHAEL LARRY THOMAS

No. 518PA91

(Filed 4 September 1992)

**Municipal Corporations § 12.3 (NCI3d) — governmental immunity — Risk Acceptance Management Corporation — no waiver of immunity**

Defendant City did not waive governmental immunity by organizing the Risk Acceptance Management Corporation, RAMCO, for the payment of tort claims of $1,000,000 or less against the City. It is clear that the City has not participated in a local governmental risk pool because the City has not joined with any other local government in the operation of RAMCO; the City has not entered into an insurance contract with RAMCO because RAMCO has not agreed to pay any money or do any act as an indemnity to the City for loss or injury to the City and, in fact, the City has agreed to indemnify RAMCO for payments it makes for tort claims against the City; the collection of leaves from the street did not make the street itself unsafe, so that the exception to governmental immunity for the negligent failure to maintain streets in a reasonably safe condition does not apply; the Court declined to abolish the doctrine of governmental immunity; action by the City under N.C.G.S. § 160A-167 does not waive immunity; the City is not equitably estopped from raising the defense of governmental immunity in that it paid the property damage portion of plaintiff's claim and engaged in settlement negotiations with the plaintiff prior to filing this action because the plaintiff did not change his position to his detriment based on any action by the City and there was no misrepresentation by the City as to liability insurance coverage; the only third

BLACKWELDER v. CITY OF WINSTON-SALEM

[332 N.C. 319 (1992)]

party benefit plaintiff is entitled to receive is the City's contract with RAMCO to pay certain claims against the City and RAMCO's negotiation of such a claim with plaintiff; and, finally, the Supreme Court declined to pass on the constitutional contention that the City violated the Equal Protection Amendment by picking and choosing through RAMCO the claims it would pay.

**Am Jur 2d, Municipal Tort Liability §§ 5, 14, 19, 37-38.**

**Comment Note—Municipal immunity from liability for torts. 60 ALR2d 1198.**

ON discretionary review pursuant to N.C.G.S. § 7A-31, prior to determination by the Court of Appeals of an order granting partial summary judgment in favor of the plaintiff, entered by *Seay, J.,* in Superior Court, FORSYTH County on 27 August 1991. Heard in the Supreme Court 16 April 1992.

The plaintiff brought this action to recover for what he alleged were severe personal injuries proximately caused by the negligence of Michael Larry Thomas, while Mr. Thomas was operating a truck in his employment for the City of Winston-Salem. The truck was being used to collect leaves from the city streets. The City filed an answer in which it pled governmental immunity as a partial bar to the plaintiff's claim.

The City made a motion for partial summary judgment based on the doctrine of governmental immunity. The City alleged that it had no liability insurance to cover claims of $1,000,000 or less. It requested the court to enter a judgment declaring the City was not liable for claims of $1,000,000 or less. The plaintiff made a motion for partial summary judgment, asking the court to strike this defense of the City.

The materials submitted in support and opposition to the two motions for summary judgment showed that the City had liability insurance coverage with General Star National Insurance Company for claims in excess of $1,000,000. The City has organized a corporation named Risk Acceptance Management Corporation (RAMCO), to handle claims against the City of $1,000,000 or less. All officers and directors of RAMCO are employees of the City. RAMCO obtained part of its funds for operations by issuing tax exempt certificates with payment of the certificates guaranteed by the City.

## BLACKWELDER v. CITY OF WINSTON-SALEM

[332 N.C. 319 (1992)]

The City agreed to pay to RAMCO $600,000 annually and to reimburse RAMCO for operating expenses, borrowed funds and all other costs.

The Court denied the City's motion for partial summary judgment and allowed the plaintiff's motion for partial summary judgment, striking the City's defense of governmental immunity. The City gave notice of appeal to the Court of Appeals. We allowed the plaintiff's petition for discretionary review prior to determination by the Court of Appeals.

*Petree, Stockton & Robinson, by J. Robert Elster, Stephen R. Berlin and Henry C. Roemer, III, for plaintiff appellee.*

*Womble, Carlyle, Sandridge & Rice, by Roddey M. Ligon, Jr., Charles F. Vance, Jr. and Gusti W. Frankel, for defendant appellant City of Winston-Salem.*

*Bell, Davis & Pitt, P.A., by Richard V. Bennett, for defendant appellant Michael Larry Thomas.*

WEBB, Justice.

We note at the outset that the orders allowing and denying the motions for summary judgment did not determine the case and are interlocutory. *Waters v. Personnel, Inc.*, 294 N.C. 200, 240 S.E.2d 338 (1978). We elect to consider the merits of the appeal pursuant to our supervisory powers under Article IV, § 12(1) of the North Carolina Constitution. *See Travco Hotels, Inc. v. Piedmont Natural Gas Company, Inc.*, 332 N.C. 288, 420 S.E.2d 426 (1992). Pursuant to this provision of our Constitution, we elect to treat the City's appeal as a petition for certiorari which we now allow.

The principal question in this appeal is whether the City of Winston-Salem, by organizing RAMCO for the payment of tort claims of $1,000,000 or less against the City, has waived its governmental immunity for those claims. N.C.G.S. § 160A-485(a) provides:

Any city is authorized to waive its immunity from civil liability in tort by the act of purchasing liability insurance. Participation in a local government risk pool pursuant to Article 39 of General Statute Chapter 58 shall be deemed to be the purchase of insurance for the purposes of this section. Immunity shall be waived only to the extent that the City

is indemnified by the insurance contract from tort liability. No formal action other than the purchase of liability insurance shall be required to waive tort immunity, and no city shall be deemed to have waived its tort immunity by any action other than the purchase of liability insurance.

It is clear that the City has not participated in a local governmental risk pool which would be deemed the purchase of liability insurance under the statute. We note that the legislation authorizing local government risk pools was adopted as part of Chapter 1027 of the Session Laws of 1986. The act which authorized these risk pools provided that it was adding Article 39 to Chapter 58 of the General Statutes. The statute was codified, however, as Article 23 of Chapter 58 of the General Statutes. We believe the reference to Article 39 of General Statute Chapter 58 in N.C.G.S. § 160A-485 should be read as a reference to Article 23 of General Statute Chapter 58.

Article 23 of Chapter 58 of the General Statutes provides that two or more local governments may form a risk pool. The City of Winston-Salem has not joined with any other local government unit in the operation of RAMCO. It is not participating in a risk pool.

The next question posed is whether by forming and operating RAMCO the City has purchased liability insurance, which is the only way, other than by joining a risk pool, that it can waive governmental immunity. We hold that the City has not purchased liability insurance.

An insurance contract is defined by N.C.G.S. § 58-1-10 as:

A contract of insurance is an agreement by which the insurer is bound to pay money or its equivalent or to do some act of value to the insured upon, and as an indemnity or reimbursement for the destruction, loss, or injury of something in which the other party has an interest.

Under this definition, the City has not entered into an insurance contract with RAMCO. RAMCO has not agreed to pay any money or do any act as an indemnity to the City for loss or injury to the City. Indeed, the City has agreed to indemnify RAMCO for payments it makes for tort claims against the City. N.C.G.S. § 160A-485(a) provides that immunity is waived by the City only to the extent it is indemnified by the insurance contract from

## BLACKWELDER v. CITY OF WINSTON-SALEM

[332 N.C. 319 (1992)]

tort liability. *Black's Law Dictionary* 769 (6th ed. 1990) defines indemnify as "[t]o restore the victim of a loss, in whole or in part, by payment, repair, or replacement." RAMCO does not do any of these things and under N.C.G.S. § 160A-485(a), the City has not waived its liability by its contract with RAMCO. This case is similar to *Insurance Co. v. Gibbs*, 260 N.C. 681, 133 S.E.2d 669 (1963), in which we held that a contract under which a first party was required to reimburse a second party for claims paid by the second party for losses incurred by the first party was not an insurance contract.

One characteristic of an insurance contract is the shifting of a risk from the insured to the insurer. If no risk is shifted there is not an insurance contract. *Helvering v. LeGierse, et al.*, 312 U.S. 531, 85 L. Ed. 996 (1941); *Clougherty Packing Co. v. Commissioner*, 811 F.2d 1297 (1987); *Beech Aircraft Corp. v. U.S.*, 797 F.2d 920 (1986). In this case, there is not a shifting of any risk from the City to RAMCO. The City is bound to reimburse RAMCO for any claims RAMCO pays for the City.

N.C.G.S. § 58-28-5 requires that before a company can transact business as an insurance company in this state, it must procure a certificate of authority from the Commissioner of Insurance. A certificate has not been procured by RAMCO.

For the above reasons, we hold that the City has not waived its governmental immunity by the purchase of insurance.

The plaintiff, relying on *Hamilton v. Rocky Mount*, 199 N.C. 504, 154 S.E. 844 (1930), contends that the City is not protected by governmental immunity in this case. In *Hamilton*, we held that there is an exception to the doctrine of governmental immunity for the negligent failure of a city to maintain its streets in a reasonably safe condition. *See also Hunt v. High Point*, 226 N.C. 74, 36 S.E.2d 694 (1946). We believe this case is governed by *Stephenson v. Raleigh*, 232 N.C. 42, 59 S.E.2d 195 (1950) and *Broome v. Charlotte*, 208 N.C. 729, 182 S.E.2d 325 (1935). In *Stephenson*, we held that the collecting and removing of prunings from shrubbery and trees from the residences of citizens is a governmental function and a city is not liable for the negligent operation of a truck used for this purpose. In *Broome*, we held that the collection of garbage is a governmental function which protects a city from liability for the negligent operation of a garbage truck. In *Hamilton*, the allegations of the complaint were that the city was laying

a cable in such a manner that it was an obstruction to those walking on the sidewalk. There is no allegation in this case that the street was obstructed. The collection of leaves from the street may have been done in a negligent manner, but it did not make the street itself unsafe.

The plaintiff asks us either to abolish governmental immunity or to change the way it is applied. Although it is true that the doctrine of governmental immunity was first adopted by this Court, it has been recognized by the General Assembly in N.C.G.S. § 160A-485. We feel that any change in this doctrine should come from the General Assembly. See Steelman v. City of New Bern, 279 N.C. 589, 184 S.E.2d 239 (1971). We decline to disturb the doctrine of governmental immunity.

The plaintiff next says that the City has waived governmental immunity by instituting a plan pursuant to N.C.G.S. § 160A-167, under which the City may pay all or part of some claims against employees of the City. N.C.G.S. § 160A-485 provides that the only way a city may waive its governmental immunity is by the purchase of liability insurance. Action by the City under N.C.G.S. § 160A-167 does not waive immunity.

The plaintiff next argues that the City is equitably estopped from raising the defense of governmental immunity because it paid the property damage portion of the plaintiff's claim and engaged in settlement negotiations with the plaintiff prior to the filing of the action. He says that he relied on this action by the City to believe that the City would reimburse him for all his damages. He does not say he changed his position in reliance on this action by the City. We said in Sykes v. Belk, 278 N.C. 106, 179 S.E.2d 439 (1971), "[i]t is generally recognized in North Carolina that the doctrine of estoppel will not be applied against a municipality in its governmental, public, or sovereign capacity." Id. at 120, 179 S.E.2d at 448. In Helms v. Charlotte, 255 N.C. 647, 122 S.E.2d 817 (1961), we said, "[a] municipality cannot be estopped to enforce a zoning ordinance against a violator by the conduct of its officials in encouraging or permitting the violation." Id. at 652, 122 S.E.2d at 821.

Assuming that the City is subject to a plea of equitable estoppel, such an estoppel would not apply in this case. In order to estop a party from asserting a defense, the party who desires to take advantage of the estoppel must show that in reliance on

**BLACKWELDER v. CITY OF WINSTON-SALEM**

[332 N.C. 319 (1992)]

the other party's action, he changed his position to his detriment. *Highway Commission v. Thornton,* 271 N.C. 227, 156 S.E.2d 248 (1967). There is no such showing in this case. The plaintiff has made his claim against the City and continued to press the claim before and after the City pled the doctrine of sovereign immunity. The plaintiff has not changed his position to his detriment based on any action by the City. *Godley v. County of Pitt,* 306 N.C. 357, 293 S.E.2d 167 (1982), upon which the plaintiff relies, is not helpful to him. That case was specifically limited to estoppels involving workers' compensation claims in CETA programs.

The plaintiff also contends that the City is estopped to plead governmental immunity because it has misrepresented its position by alleging it does not have insurance, when in fact it has a contract with RAMCO to provide it with liability insurance. He says this is an unfair and deceptive trade practice in violation of Chapters 58 and 75 of the General Statutes. The pleadings show that at no time did the City represent that it had liability insurance coverage. It has contended and we have held that its contract with RAMCO does not provide liability insurance coverage. There has not been a misrepresentation by the City as to liability insurance coverage.

The plaintiff next contends that he is a third party beneficiary of the contract between the City and RAMCO. We have our doubts that the plaintiff is a third party beneficiary to this contract but if he is, it is not helpful to him in this case. The City has contracted with RAMCO to pay certain claims against the City and RAMCO has negotiated such a claim with the plaintiff. That is the benefit plaintiff, as third party beneficiary, is to receive under the contract. He cannot receive more. *See Vogel v. Supply Co. and Supply Co. v. Developers, Inc.,* 277 N.C. 119, 177 S.E.2d 273 (1970).

Finally, the plaintiff contends that the City has violated the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States and Article I, Section 19 of the Constitution of North Carolina. He says this is so because the City, through RAMCO, can pick and choose what claims it will pay, thus depriving the plaintiff of the equal protection of the law. We decline to pass on this constitutional question because of its posture in this case. If we were to hold the City has acted unconstitutionally in the way it administers RAMCO, it would not mean the City had waived its governmental immunity. The most we could do is strike down RAMCO. A decision involving this con-

stitutional question would not resolve this case and we do not consider it.

For the reasons stated in this opinion, we reverse the judgment of the superior court and remand for further proceedings consistent with this opinion.

Reversed and remanded.